**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **ANGELA AYRES,** *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | | **Case No.: GJH-20-275** |
| | * | |
| **PHH MORTGAGE CORPORATION,** *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

**MEMORANDUM OPINION**

*Pro se* Plaintiffs Angela Ayres and Stephan Ayres sued Defendants PHH Mortgage Corporation ("PHH"), Ocwen Loan Servicing, LLC ("Ocwen"), and Bank of New York Mellon, N.A. ("Bank of New York Mellon") in the Circuit Court for Prince George's County, Maryland alleging that a loan modification agreement they entered into violated the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-101 *et seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), MD. CODE ANN., COM. LAW § 14-201 *et seq.*, and the Maryland Mortgage Fraud Protection Act ("MMFPA"), MD. CODE ANN., REAL PROP. § 7-401 *et seq.*, or, in the alternative, that the loan modification agreement constituted common law negligence. ECF No. 2. Defendants subsequently removed the case to this Court. ECF No. 1. Now pending before the Court are Defendants' Motion to Dismiss, ECF No. 10, Plaintiffs' Motion to Remand, ECF No. 11, and Plaintiffs' Motion to Strike Defendant's Motion to Dismiss, ECF No. 14. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' Motion to Dismiss is granted, Plaintiffs' Motion to Remand is denied, and Plaintiff's Motion to Strike Defendant's Motion to Dismiss is denied.

I.      **BACKGROUND**[1]

On March 18, 1991, Plaintiff Stephen Ayres borrowed $72,660.00 (the "Loan") from

Market Street Mortgage Corporation in order to finance the purchase of a property (the

"Property"). ECF No. 2 ¶ 17; ECF No. 2 at 47. The Loan was evidenced by a Note signed by Mr.

Ayres, *see id.* at 47–48, and it was secured by a Deed of Trust in favor of Market Street

Mortgage Corporation, *see id.* at 43–46.

In 2013, Salomon Brothers Realty Corp. ("Salomon Brothers") was the holder of the

Note, *id.* ¶ 21, and Defendant Ocwen was the mortgage servicer, *id.* ¶ 20. On June 3, 2013,

Plaintiffs sued Defendant Ocwen and prior mortgage servicers and noteholders in this Court. *See*

*Ayres v. Ocwen Loan Servicing, LLC*, No. CCB-13-1597, ECF No. 1 (D. Md.) ("*Ayres I*"). On

August 27, 2014, the Court dismissed the case, but granted Plaintiffs leave to amend. *See Ayres*

*I*, ECF Nos. 55, 56. On October 24, 2014, Plaintiffs filed an amended complaint against

Defendant Ocwen and Salomon Brothers. *See Ayres I*, ECF No. 61 ¶¶ 11, 12. Relevant to this

case, the amended complaint alleged that the defendants violated the MCPA, MCDCA, and

MMFPA or, in the alternative, committed negligence by misrepresenting facts related to the

status of the Loan and attempting to collect sums related to the Loan that were not due.[2] *See*

*Ayres I*, ECF No. 61. The amended complaint also requested declaratory and injunctive relief,

including an accounting of the amounts due on the Loan. *Id.* On September 8, 2015, the Court

dismissed the MMFPA claim with prejudice because the amended complaint did not allege that

Plaintiffs had relied on any misrepresentations made by the defendants or suffered any damages

---

[1] Unless otherwise stated, the background facts are taken from Plaintiffs' Complaint, ECF No. 2, and are presumed to be true.

[2] The amended complaint also alleged violations of the Real Estate Settlement Procedures Act and Fair Debt Collections Practices Act, tortious interference with economic relationship, and defamation, but these claims are not relevant to the instant case.

based on that reliance, and it dismissed the negligence claim with prejudice because the defendants did not owe any duty to Plaintiffs. *See Ayres I*, ECF No. 89 at 46–51.

On October 19, 2015, Plaintiffs filed a second amended complaint. *Ayres I*, ECF No. 100. It realleged the same claims as the previous two complaints, including the MMFPA and negligence claims that had previously been dismissed with prejudice. *Id.* On November 9, 2016, the Court granted summary judgment to the defendants on Plaintiffs' MCPA claim because the evidence established that Plaintiffs "did not rely upon any alleged misrepresentation made by defendants," and "there was no evidence that defendants made any misrepresentation with actual knowledge or with reckless to disregard as to the falsity of the asserted right." *Ayres I*, ECF No. 158.

Plaintiffs appealed, *see Ayres I*, ECF No. 161, and the United States Court of Appeals for the Fourth Circuit remanded the case back to this Court with instructions to enter a final judgment with respect to the MCDCA claim and claim for declaratory and injunctive relief, ECF No. 163. This Court entered a clarifying order on October 23, 2017 that unambiguously entered judgment in favor of the defendants. *See Ayres I*, ECF No. 171. The order clarified that the prior order had dismissed the MCDCA claim because "there was no evidence that defendants made any misrepresentation with actual knowledge or with reckless disregard to the falsity of the asserted right," and that the declaratory judgment claim was "barred under Section 3-409(b) of the Declaratory Judgment Act because a special form of remedy is otherwise provided by statute." *Id.* On May 7, 2018, the Fourth Circuit affirmed this Court's decisions to dismiss the case with prejudice and rule as a matter of law against Plaintiffs. *Ayres I*, ECF No. 179.

At some point during the *Ayres I* litigation, Defendant Bank of New York Mellon became the new holder of the Note and assignee of the Deed of Trust. ECF No. 2 ¶¶ 10, 21. On June 25,

2018, Plaintiffs' unpaid balance on the Loan was $51,072.31, with a payment due date of July 1, 2018. *Id.* at 51. On July 5, 2018, Defendant Ocwen mailed Plaintiffs a Notice of Default stating that they would need to pay the total amount of $51,072.31 by August 11, 2018 in order to cure the default. *Id.* at 49–51. On November 1, 2018, Plaintiffs entered into a Loan Modification Agreement ("LMA") with Defendant Ocwen modifying the terms of repayment for the Loan. *Id.* at 33–41. The LMA provided that the principal balance due upon maturity of the Loan would be $89,132.83, together with accrued interest and all advancements made under the terms of the mortgage. *Id.* At some point later, Defendant Ocwen merged with Defendant PHH, and PHH became the new mortgage servicer for the Loan. *Id.* ¶ 9.

On September 26, 2019, Mrs. Ayres sent a Qualified Written Request ("QWR") to Brett L. Messinger, an attorney representing Defendant PHH. *Id.* at 79–81. The QWR stated that the Loan was not in default when Ocwen took over as servicer in 2011 because the previous loan servicer, Litton, had misapplied payments to a nonexistent forbearance plan. *Id.* It stated further that the LMA Plaintiffs had entered into with Ocwen was predatory because it claimed amounts not owed and it was based on erroneous accountings by Defendant Ocwen. *Id.* It demanded an accounting of how Defendant Ocwen had arrived at the amounts demanded in the LMA and that Plaintiffs be offered a new, fair loan modification agreement. *Id.*

On December 2, 2019, Mr. Messinger sent a Response to Mrs. Ayres based on Defendant PHH's "review of the servicing records and publicly recorded information regarding [the Property]." *Id.* at 82–84. The Response stated that based on its records, the Loan was in default in 2011 when Ocwen became the servicer. *Id.* It explained that the misapplication of payments about which Mrs. Ayres complained occurred before Ocwen took over, but if Mrs. Ayres provided proof of payment for that period, Defendant PHH could evaluate whether the payments

4

were properly credited. *Id.* The Response also stated that the LMA was not predatory and that Mrs. Ayres' calculations in the QWR regarding the amount actually owed were inaccurate because Mrs. Ayres' amount included only the principal, simple interest, and late charges; according to Defendant PHH, the unpaid principal balance includes all outstanding amounts, including interest arrearage, escrow advances, and other fees and costs assessed to the account under the terms of the Note and Deed of Trust. *Id.*

On January 4, 2020, Mrs. Ayres received information regarding a mortgage audit she had requested from a third-party called Loantech. *Id.* at 85. The auditor reported that it was his opinion that Plaintiffs' ongoing loan balance had been incorrectly calculated and that the future balloon payment due upon maturity of the Loan should be $29,211.60, not $89,132.83. *Id.* at 86.

On January 7, 2020, Plaintiffs filed a Complaint in the Circuit Court for Prince George's County, Maryland related to the allegedly fraudulent LMA. ECF No. 2. In Count One, it alleges that Defendants violated the MCPA and Defendant Ocwen violated the MCDCA by misrepresenting the status of the Loan, failing to investigate and correct the amount owed on the Loan, and attempting to collect an amount not owed. *Id.* In Count Two, it alleges that Defendants violated the MMFPA by executing a LMA that included amounts not owed. *Id.* As an alternative to the claims in Counts One and Two, Count Three alleges that Defendants were negligent in making misrepresentations about the amount owed on the Loan through the LMA. *Id.* In Count Four, Plaintiffs request declaratory and injunctive relief, including an accounting of the true amounts owed prior to the LMA and an order that Defendants "proffer a fair and equitable modification inclusive of [a] principle reduction" of $89,133.00 to $29, 211.60.[3]

---

[3] The Complaint does not clearly state the principle reduction requested by Plaintiffs, but it does state elsewhere that Plaintiffs believe that the principle balance at maturity should be $29,211.60 instead of $89,133.00. ECF No. 2 ¶ 116. Thus, the Court will assume this is the principle reduction amount desired by Plaintiffs.

On January 31, 2020, Defendants removed the case to this Court based on diversity jurisdiction. ECF No. 1. On February 7, 2020, Defendants filed a Motion to Dismiss based on *res judicata* and failure to state a claim. ECF No. 10. On February 14, 2020, Plaintiffs filed a Motion to Strike Defendants' Motion to Dismiss and a response to Defendants' Motion to Dismiss, ECF No. 14, and Defendants filed a reply in support of their Motion to Dismiss and a response to Plaintiffs' Motion to Strike on February 28, 2020, ECF No. 17. Also on February 7, 2020, Plaintiffs filed a Motion to Remand. ECF No. 11. Defendants filed a response on February 21, 2020, and Plaintiffs filed a reply on February 25, 2020, ECF No. 16.

## II.     MOTION TO REMAND

Plaintiffs contend that the Court must remand this case to state court because the Complaint alleges only state law claims and the amount in controversy is not greater than $75,000. ECF No. 11 ¶ 4. Pursuant to 28 U.S.C. § 1332(a), federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States…." Diversity jurisdiction requires complete diversity between all parties. *See Bianca Del Sempione v. Provident Bank of Maryland*, 85 F.3d 615 (4th Cir. 1996) (per curiam) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). When a plaintiff files such an action in state court, the action "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Removal is proper over any action that a plaintiff could have filed in federal court. *See id.*

Here, the parties are diverse. Plaintiffs reside at 6600 Halleck Street, District Heights, Maryland, *see* ECF No. 2 ¶ 7, so they are citizens of Maryland. At the time of its existence,

Defendant Ocwen was a limited liability corporation organized under the laws of Delaware. ECF No. 1 ¶ 4. Its sole member was Ocwen Mortgage Servicing, Inc., a corporation incorporated under the laws of the United States Virgin Islands with its principal place of business in the United States Virgin Islands. *Id.* Thus, for diversity purposes, Defendant Ocwen was a citizen of the United States Virgin Islands. *See* 28 U.S.C. § 1332(c)(1); *Central West Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (stating that the citizenship of a limited liability corporation is determined by the citizenship of all of its members). Defendant PHH is a corporation incorporated under the laws of New Jersey with its principal place of business in New Jersey. ECF No. 1 ¶ 5. Defendant PHH is therefore a citizen of New Jersey. *See* 28 U.S.C. § 1332(c)(1). Finally, Defendant Bank of New York Mellon is a national banking association with its main office located in California. ECF No. 1 ¶ 6. Defendant Bank of New York Mellon is therefore a citizen of California. *See* 28 U.S.C. § 1348; *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located"). Because Plaintiffs are citizens of Maryland and Defendants are citizens of the United States Virgin Islands, New Jersey, and Delaware, the parties are completely diverse.

The amount in controversy is also greater than $75,000. In a removal action, the amount in controversy is measured by "the sum demanded in good faith in the initial pleading." 28 U.S.C. § 1446(c)(2). And where, as here, the action seeks declaratory and injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Gonzalez v. Fairgale Props. Co., N.V.*, 241 F. Supp. 2d 512, 517 (D. Md. 2002) (internal quotation marks omitted). "If a complaint 'does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds

[$75,000].'" *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (quoting *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)). For a court to deny diversity jurisdiction based on the amount in controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Impact Office Prods., LLC v. Krug*, No. AW-10-1864, 2010 WL 4296344, at *1 (D. Md. Oct. 29, 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)) (internal quotation marks omitted).

Here, Plaintiffs seek monetary damages under Counts One through Three and declaratory and injunctive relief under Count Four. "[C]laims that are simply pleading alternative legal theories to recover for one harm cannot be aggregated to reach the amount in controversy." *Johnson v. Xerox Educ. Solutions LLC*, No. GJH-14-15422, 2014 WL 5361302, at *4 (D. Md. Oct. 20, 2014). According to the Complaint, Plaintiffs seek damages in Counts One and Two for Defendants' misrepresentations regarding the status and amount of the Loan, failure to investigate and correct the amount of the Loan, and attempts to collect an amount not owed or, in the alternative, in Count Three for Defendants' negligence in conducting those same activities. Because Counts One and Two seek to remedy the same harm as Count Three, Plaintiffs may only recover under one set of theories and so the claims in Counts One and Two will not be aggregated with the claim in Count Three. Plaintiffs seek declaratory and injunctive relief under any theory of recovery, so those claims will be aggregated.

The Court must therefore determine whether Plaintiffs could recover more than $75,000 under Counts One, Two, and Four or under Counts Three and Four. According to the Complaint, Count One seeks "a sum of not less than $40,000 against Ocwen for actual damages and losses (including economic and non-economic)," ECF No. 2 ¶ 99, and Count Two seeks "a sum of not less than $15,000 [for actual damages] and losses (including economic and non-economic),"

ECF No. 2 ¶ 109. Count Four seeks injunctive and declaratory relief, including a declaration of the true amounts owed by Plaintiffs prior to the LMA, rescission of the LMA, and an order requiring Defendants to offer "a fair and equitable modification inclusive of principle reduction." *Id.* ¶¶ 115, 120. The true "object" of Count Four thus appears to be a new loan modification agreement that reduces Plaintiffs' balance at the end of the loan modification period from the $89,133.00 amount in the current LMA that Plaintiffs contend is inaccurate to the $29,211.60 amount that Plaintiffs contend is accurate. *See id.* ¶ 116. That value of that reduction is $59,921.40. Thus, in total, the possible recovery for Counts One, Two, and Four would be $114,921.40, which exceeds the $75,000 threshold.[4]

The alternative theory of recovery similarly meets the amount in controversy requirement. For Count Three, the Complaint seeks "the sum of not less than $20,000." ECF No. 2 ¶ 113. Thus, when combined with the declaratory and injunctive relief requested in Count Four, the total recovery would be $79,921.40, which exceeds the $75,000 threshold and satisfies the amount in controversy requirement.

Because the parties are completely diverse and the amount in controversy exceeds $75,000, diversity jurisdiction was a proper basis for removal. Plaintiffs' Motion to Remand is therefore denied.

## III.     MOTION TO STRIKE

Plaintiffs seek to strike Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) permits the court to strike "from a *pleading* an insufficient defense or

---

[4] Defendants encourage the Court to read the damages requests to be the specified amount for actual damages *plus* an amount for economic and non-economic losses. ECF No. 15 ¶ 10. "[A]ll doubts regarding jurisdiction must be construed in favor of the party opposing removal," and "the Court will not read the Complaint to defy its plain meaning," *Ndzerre v. Liberty Power Corp., LLC*, 318 F. Supp. 3d 761, 765 (D. Md. 2018), so the Court interprets Count One as requesting a total amount of $40,000.00 for actual damages and losses and Count Two as requesting a total amount of $15,000.00 for actual damages and losses.

any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Under Federal Rule of Civil Procedure 7, pleadings are defined as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). A motion to dismiss is not a pleading. *See Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795 (4th Cir. 1993). Thus, Rule 12(f) does not permit the Court to strike Defendants' Motion to Dismiss, and the best avenue for Plaintiffs to challenge Defendants' Motion to Dismiss would be through filing an opposition, which they have done. Plaintiffs' Motion to Strike is therefore denied.

## IV.   MOTION TO DISMISS

### A.  Standard of Review

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555 (stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Although pleadings of self-represented litigants must be accorded liberal construction, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), liberal construction does not mean a court can ignore a clear failure to allege facts that set forth a cognizable claim, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Additionally, where, as here, a plaintiff states a claim sounding in fraud, the plaintiff must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md. 2000); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (describing the "who, what, when, where, and how" of the fraud claim). Despite these heightened requirements, "a court should hesitate to dismiss if it finds (1) that the defendant[s] [have] been made aware of the particular circumstances for

which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002) (describing pleading requirements in case of fraudulent conveyance) (internal citations omitted).

Finally, Defendants ask the Court to judicially notice facts from prior court proceedings. Pursuant to Federal Rule of Evidence 201, a court may "judicially notice a fact that is not subject to reasonable dispute," provided that the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). These facts may be properly considered by the court without converting a motion to dismiss into a motion for summary judgment, as long as the facts are construed in the light most favorable to the plaintiff. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). In addition, when, as here, a Defendants have raised the defense of *res judicata* "a court may judicially notice facts from a prior judicial proceeding." *Ashe v. PNC Fin. Servs. Grp., Inc.*, 165 F. Supp. 3d 357, 360 (D. Md. 2015) (quoting *Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010)). The consideration of the affirmative defense of *res judicata* is appropriate where "it clearly appears on the face of the complaint … and the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F. 3d 521, 524 n.1 (4th Cir. 2000).

### B.  Discussion

#### i.  *Res Judicata*

Defendants contend that Plaintiffs' claims in this case are barred by the final judgment in *Ayres I* under the doctrine of *res judicata*. In opposition, Plaintiffs contend that their Complaint is based on a new set of claims related to the LMA. "Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided or could have been decided in

an original suit." *Mbongo v. JP Morgan Chase Bank, N.A.*, No. PWG-14-1620, 2014 WL 3845443, at *3 (D. Md. Aug. 4, 2014), *aff'd*, 589 F. App'x 188 (4th Cir. 2015) (quoting *Laurel Sand & Gravel Co. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008)). "For res judicata to prevent a party from raising a claim, three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action.'" *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg. Co.,* 914 F.2d 39, 42 (4th Cir. 1990)). "Even claims that were not raised in the original suit may be precluded if they arose from the same transaction or occurrence as those raised in the first suit and were available to the plaintiff at the time of the first suit." *Id.* at 210–11.

Here, the first two elements are easily met. First, in *Ayres I*, the Court ruled on each of Plaintiffs' claims on the merits. It dismissed their MMFPA and negligence claims with prejudice because Plaintiffs had failed to allege required elements of those claims, and it granted summary judgment in favor of the *Ayres I* defendants on the MCPA and MCDCA claims and the request for declaratory and injunctive relief because there was no evidence to support those claims. These rulings constitute final judgments on the merits. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (stating that a "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits'" for purposes of *res judicata*); *Pottraz v. Davis*, 588 F. Supp. 949, 954 (D. Md. 1984) ("A summary judgment dismissal *is* a final adjudication on the merits under Fourth Circuit cases." (emphasis in original)).

Second, the identity of the parties in *Ayres I* and the instant case is the same. Plaintiffs Angela and Stephan Ayres were also the plaintiffs in *Ayres I*. Defendant Ocwen, as mortgage

servicer, and Salomon Brothers, as the noteholder, were named as defendants in *Ayres I*, and here, Ocwen; PHH, Ocwen's successor in interest; and Bank of New York Mellon, Salomon Brother's successor in interest, are named as Defendants. These parties are considered the same for purposes of *res judicata*. *See Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) ("There are three generally recognized categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: … (2) a successor-in-interest to a prior party").

Whether this case raises the same claims as *Ayres I*, and is therefore barred, is a closer question, however. Defendants are correct that the Complaint is almost identical to the amended and second amended complaints in *Ayres I. Compare* ECF No. 2, *with Ayres I*, ECF No. 61, *and Ayres I*, ECF No. 100. Thus, any claims in the Complaint based on attempts to collect payments under the terms of the original Loan are certainly barred because they "arose from the same transaction or occurrence as those raised in the first suit and were available to [Plaintiffs] at the time of the first suit." *See Ohio Valley Envtl. Coal*, 556 F.3d at 210–11.

As Plaintiffs point out, however, there is a key difference between the claims in this case and those in *Ayres I*: this case alleges that the LMA is unlawful.[5] The LMA did not exist until after the final judgment in *Ayres I*, and so any claims based on the LMA could not have been decided in that case. *See Mbongo*, 2014 WL 3845443, at *3; *see also Meekins v. United Transp. Union*, 946 F.2d 1054, 1058 (4th Cir. 1991) (finding that the plaintiffs' claim "arises from events separate from those at issue in the first suit" because "[t]he claim [P]laintiffs advance in this suit

---

[5] It is true that the Complaint is almost identical to the first and second amended complaints in *Ayres I* and that Plaintiffs have made only minor changes in order to include references to the LMA and other events that occurred after the final judgment in *Ayres I*. Plaintiffs are proceeding *pro se*, however, so the Court will afford their pleadings liberal construction and accept their proffers that this case is based on new events that occurred after *Ayres I*. *See Gordon*, 574 F.2d at 1151. Any deficiencies in how those claims are pled are better left to an analysis under the standards discussed in *Iqbal* and *Twombly*.

did not exist at the time of the first suit"); *id.* ("[R]es judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action." (quoting *Crowe v. Leeke*, 550 F.2d 184, 187 (4th Cir. 1977) (internal quotation marks omitted))). Thus, Plaintiffs claims based on the LMA are not barred by *res judicata* and may proceed if they sufficiently state a claim for which relief can be granted.

### ii.    Failure to State a Claim

Defendants also contend that the Complaint fails to state any claim based on the LMA. The Court will address each count separately.

### a.  Count One: MCPA and MCDCA

In Count One, Plaintiffs allege that all Defendants violated the MCPA and that Defendant Ocwen violated the MCDCA by misrepresenting the status of the Loan and attempting to collect an amount not owed through the LMA. The MCPA prohibits "unfair or deceptive trade practices." *See* MD. CODE ANN., COM. LAW § 13-301. "To state a claim under the MCPA, a plaintiff must adequately plead that: (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018). "Because the … MCPA claim sounds in fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Johnson v. Nationstar Mortg., LLC*, No. GJH-14-2536, 2014 WL 5377636, at *3 (D. Md. Oct. 21, 2014) (internal quotation marks omitted).

Here, the Complaint alleges generally that Plaintiffs were "forced into a predatory and unfair mortgage modification," ECF No. 2 ¶ 5, that Defendant Ocwen knew its records contained incorrect information but did not correct it when requested by Plaintiffs and "intended" for Plaintiffs "to rely upon its misrepresentations and omissions of material fact," *id.* ¶¶ 26, 27, that

the LMA ultimately contained incorrect information about the amount due, *id.* ¶ 95, and that Defendant Ocwen attempted to collect amounts that were not due, *id.* ¶¶ 84, 85. These allegations, however, do not contain any specific information about "the time, place, speaker, and contents of the allegedly false acts or statements" with respect to the formation of the LMA. *See Adams*, 193 F.R.D. at 249–50. More importantly, there are no allegations that Plaintiffs "*reasonably relied*" on any misrepresentations in signing the LMA; indeed, Plaintiffs had known since they filed *Ayres I* that Defendants and their privies allegedly had incorrect records of the amount owed on the Loan and, according to the Complaint, Plaintiffs continued to challenge, and never accepted, the amounts demanded by Defendants. *See Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 253 (D. Md. 2013) (requiring a plaintiff alleging an MCPA claim to "show that they reasonably relied to their detriment on some promise or misrepresentation" made by the defendant); *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) ("A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice."). Thus, the Complaint fails to state a claim under the MCPA.[6]

The Complaint also fails to allege an MCDCA violation against Defendant Ocwen. The MCDCA provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." MD. CODE ANN., COM. LAW § 14-202(8). The "knowledge" requirement of the MCDCA "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004).

---

[6] The Complaint also seems to allege that Defendants violated § 13-316(c) of the MCPA by failing to properly investigate and correct Plaintiffs' account as requested. *See* ECF No. 2 ¶ 95. Section 13-316(c), however, requires only that a mortgage servicer "designate a contact to whom mortgagors may direct complaints and inquiries," and that the "contact shall respond in writing to each written complaint or inquiry within 15 days if requested." MD. CODE ANN., COM. LAW § 13-316(c). It does not require an investigation as suggested by Plaintiffs, and so it does not support an MCPA violation based on the facts alleged in the Complaint.

Here, Plaintiffs fail to make any nonconclusory allegations that Defendant Ocwen had "actual knowledge" that it included in the LMA an amount not owed or that it acted "with reckless disregard to the falsity" of the amount it included in the terms of the LMA. The LMA was executed within months of the Fourth Circuit's mandate affirming the conclusion of the *Ayres I* court that there was no evidence that the *Ayres I* defendants "had made any misrepresentation with actual knowledge or with reckless disregard to the falsity of the asserted right" took effect, *see Ayres I*, ECF Nos. 171, 182, and there are no allegations related to events that occurred after this final judgment that would suggest the LMA was executed by Defendant Ocwen in bad faith such that it knew the amounts it was attempting to collect were incorrect. Indeed, the only allegations regarding any notice to Defendants of the alleged inaccuracy in the unpaid balance is the QWR Mrs. Ayres sent to Mr. Messinger on September 29, 2018, which was *after* the LMA was executed (and after Defendant Ocwen ceased to exist). Thus, Plaintiffs have not sufficiently alleged that Defendant Ocwen had the requisite knowledge for its actions surrounding the LMA to constitute a MCDCA violation. Count One is therefore dismissed.

### b. Count Two: MMFPA

In Count Two, Plaintiffs allege that Defendant Ocwen violated the MMFPA by claiming amounts not due in the LMA. The MMFPA prohibits the commission of "mortgage fraud," MD CODE ANN. REAL PROP. § 7-402, which is defined as "any action by a person made with the intent to defraud that involves … [k]nowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process …" *Id.* § 7-401(d). The "mortgage lending process" includes servicing. *Id.* § 7-401(e)(1)–(2)(i).

In order to state an MMFPA claim, a plaintiff must plead the elements of a common law

fraud claim, and that claim must be alleged with particularity. *Galante v. Ocwen Loan Servicing*

*LLC*, No. ELH-13-1939, 2014 WL 3616354, at *28 (D. Md. July 18, 2014). In Maryland, the

elements of a fraud claim are:

> (1) that the defendant made a false representation to the plaintiff, (2) that
> its falsity was either known to the defendant or that the representation was
> made with reckless indifference as to its truth, (3) that the
> misrepresentation was made for the purpose of defrauding the plaintiff, (4)
> that the plaintiff relied on the misrepresentation and had the right to rely
> on it, and (5) that the plaintiff suffered compensable injury resulting from
> the misrepresentation.

*SpinCycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 590 (D. Md. 2002) (quoting *Alleco Inc. v.*

*Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 195 (1995)).

Here, as with the claims under Count One, the Complaint fails to state with particularity

the manner in which Defendant Ocwen made any deliberate misstatements with respect to the

LMA or how Plaintiffs relied on those statements. The Complaint therefore fails to state a claim

under the MMFPA, and Count Two is dismissed.

### c.   Count Three: Negligence

In Count Three, as an alternative to their claims in Counts One and Two, Plaintiffs allege

that Defendant Ocwen was negligent with respect to the LMA. To state a claim for negligence

under Maryland law, a plaintiff must allege that (1) the defendant had a duty to the plaintiff, (2)

the defendant breached the duty, (3) the plaintiff suffered actual loss, and (4) the loss was

proximately caused by the breach. *See Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 76 (1994).

The Complaint alleges the following with respect to duty:

> 24. Under the Maryland common law, Ocwen owed the Plaintiffs a duty of
> care due to the 'intimate nexus' which exists between the Plaintiffs and
> each of the Defendants who are real estate professionals. This 'intimate

nexus' arises from the relation of a customer like the Plaintiffs who rely upon the accuracy of the professional's services to them.

25. As a licensed Maryland mortgage lender and servicer, Ocwen volunteered and agreed to accept as a condition of its license a "duty or good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan" to include a duty to "promptly" provide borrowers with an accounting of their loan when requested and to have "trained" employees on staff to "promptly answer and response to borrower inquiries." The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction.

ECF No. 2 ¶¶ 24, 25. These are the same allegations that Plaintiff used to support their negligence claim in *Ayres I. See Ayres I*, ECF No. 61 ¶¶ 15, 16, 17.

"Collateral estoppel, also called issue preclusion, 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Lucero v. Early*, No. GLR-13-1036, 2018 WL 4333745, at *3 (D. Md. Sept. 11, 2018) (quoting *E. Associated Coal Co. v. Dir., Office of Workers' Comp. Programs*, 578 F. App'x 165, 173 (4th Cir. 2014)). Collateral estoppel requires that "(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the issue's determination was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum." *Id.* (quoting *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006)) (internal quotation marks omitted).

Here, although Plaintiffs now attempt to bring claims with respect to the LMA, the issue of whether they were owed a duty by Defendants and their privies has already been litigated and was actually determined in *Ayres I. See Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 274–276 (D. Md. 2015) (finding that Defendants and their privies did not owe a regulatory duty of good faith and fair dealing, a duty as real estate professionals, or a duty because of the intimate nexus between the parties). This determination as to duty was "a critical and necessary part" of the *Ayres I* decision as to the negligence claim, the *Ayres I* judgment was final and valid, and Plaintiffs "had a full and fair opportunity" to litigate the duty issue in the *Ayres I* litigation. Thus, because the *Ayres I* court already determined that Plaintiffs were not owed a duty by Defendants and their privies, they are not permitted to relitigate that issue now. Thus, the Complaint fails to state a claim for negligence, and Count Three is dismissed.

### d. Count Four: Declaratory and Injunctive Relief

In Count Four, Plaintiffs request declaratory and injunctive relief. "[T]he existence of a justiciable controversy is a prerequisite to the maintenance of a declaratory judgment in Maryland," and that process "is not available to decide purely theoretical questions or questions that may never arise." *Hamilton v. McAuliffe*, 277 Md. 336, 339–40 (1976). Additionally, "a claim for injunctive relief is not a standalone cause of action." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 770 (D. Md. 2015). Here, because each of Plaintiffs' substantive claims for relief have been dismissed, there is no basis upon which declaratory or injunctive relief could be granted. Thus, Count Four is dismissed.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is denied, Plaintiffs' Motion to Strike is denied, and Defendants' Motion to Dismiss is granted. A separate Order shall issue.

Date: <u>June    29, 2020</u>                                              /s/_____
                                                                GEORGE J. HAZEL
                                                                United States District Judge